FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

2011 MAY 23 P 2: 57

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

CALVARY CHRISTIAN CENTER, )
)
Plaintiff, )
)
vs. )   Case No. 3:11cv 342
)
CITY OF FREDERICKSBURG, )
VIRGINIA, )
)
Defendant. )
_____ )

**VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE**
**RELIEF, DECLARATORY JUDGMENT, AND DAMAGES**

COMES NOW the Plaintiff, by counsel, and for its Complaint against the Defendant

CITY OF FREDERICKSBURG, VIRGINIA, alleges and states as follows:

**INTRODUCTION**

1.     On December 16, 2010, the City of Fredericksburg denied a special use permit to

Calvary Christian Center ("Church") to operate a private school for disabled children in its

church facility.

2.     The City Council denied the Special Use Permit despite the fact that the Director

of Planning and Community Development recommended approval of the Church's application.

3.     The City Council denied the Special Use Permit despite the fact the City Planning

Commission, after a public hearing, unanimously recommended approval of the Church's

application.

4.     In denying the Church's application for a Special Use Permit, the members of the

City Council made stereotypical and discriminatory remarks regarding the disabled children the

Church proposed to include in its school.

5.        The only reasons given by the City Council for the denial of the Church's applications were discriminatory and stereotypical statements about disabled children that were based on unfounded fears and prejudices regarding the disabled.

6.        The City Council's denial placed a substantial burden on the Church's exercise of religion without any compelling interest that was advanced in the least restrictive means available.

7.        The City Council's denial of the Church's Special Use Permit application was discriminatory, arbitrary, and violated the Church's constitutional and statutory rights.

8.        To redress irreparable harm to its rights, Plaintiff seeks declaratory and injunctive relief for violation of its constitutional and statutory rights, and seeks compensatory and nominal damages to redress past legal injuries.

## JURISDICTION AND VENUE

9.        This action arises under the United States Constitution; federal law, particularly 42 U.S.C. §§ 1983 and 1988, RLUIPA, 42 U.S.C. §2000cc-1, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. §701, *et seq.*

10.      This Court is vested with original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331, 1343 and 1367.

11.      This Court is vested with authority to grant the requested declaratory judgment by operation of 28 U.S.C. §§ 2201, et seq.

12.      This Court is authorized to issue the requested injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

13.      This Court is authorized to award attorneys fees pursuant to 42 U.S.C. § 1988, 42

U.S.C. §12205, and 29 U.S.C. §794a.

14.     Venue is proper in United States District Court for the Eastern District of

Virginia, Richmond Division under 28 U.S.C. § 1391(b), and Local Civil Rule 3(c), in that the

Defendant resides in this district, the events giving rise to the claim occurred within the district,

and the subject property is located in this district.

## PARTIES

15.     Plaintiff Calvary Christian Center is a church and an unincorporated association.

16.     Defendant City of Fredericksburg, Virginia, is a municipality established,

organized, and authorized under and pursuant to the laws of Virginia, with the authority to sue

and be sued, and was at all times relevant herein, operating within the course and scope of its

authority and under color of state law.

## STATEMENT OF FACTS

### Background on Calvary Christian Center

17.     Calvary Christian Center is a church that has been in existence in the City of

Fredericksburg since 1951.

18.     The Pastor of Calvary Christian Center is Michael Hirsch.

19.     Calvary is currently located at 2222 Jefferson Davis Highway in Fredericksburg,

Virginia.

20.     The Church's property is within the C-T "commercial/office-transitional" zoning

district. *See* Fredericksburg Zoning Code §78-479.[1]

21.     A Church or other place of worship is allowed as a permitted use in the C-T

---

[1] The Zoning Code is a public document and can be accessed at
http://library.municode.com/index.aspx?clientId=12340&stateId=46&stateName=Virginia. All references
herein to "§ ___" refer to the Zoning Code, which is incorporated by reference, and can be accessed by
following this link, and then clicking on "Chapter 78: Zoning, Planning and Development."

zoning district.

22.     The Church operates from two connected buildings at the Jefferson Davis Highway property. *See* Plans of Church property and building layout attached as Exhibit "A".

23.     The Church and its members have a sincere religious belief to gather together to read the Bible, sing religious songs, pray, and to share biblical insight.

24.     One of the purposes of the Church is to educate, inform, and train people regarding biblical truth, including teaching a biblical worldview of moral, cultural, and civic issues.

25.     Individual and communal prayer is a central tenet of Christianity and Plaintiff's religious beliefs.

26.     The Church believes that it is to regularly assemble with others to pray, study the Bible, sing religious songs, and share biblical insight on moral, cultural, and civic issues through education and training as an act of worship.

27.     In accordance with its sincerely held religious beliefs, the Church meets regularly for worship, Bible study, community ministry, and Christian fellowship at its property in Fredericksburg.

28.     The Church has a sincerely-held religious belief to reach families and children with the Gospel of Jesus Christ and to minister the love of Christ to the City of Fredericksburg and the surrounding areas.

29.     The Church believes that it has been called by God specifically to care for and minister to children.

30.     As part of its sincere religious beliefs, Calvary operates a before and after school daycare called Precious Moments Day Care.

31.     Precious Moments Day Care is licensed by the Commonwealth of Virginia as a religiously exempt child day care center to care for 32 children ages six through twelve years. *See* Exhibit "B".

32.     The day care operates only in Rooms 114 and 116 of the first floor of the Church building. *See* Building layout attached as Exhibit "A".

33.     The day care operates before school from 6:00 to 8:15 a.m. and then after school from 3:30 to 6:00 p.m.

34.     In 2009, the Church applied for and was granted a Special Use Permit by the City of Fredericksburg to operate the child day care center. *See* Exhibit "C".

### Application for Special Use Permit for Day School

35.     As part of the Church's sincerely held religious beliefs, the Church applied for a special use permit to operate a day school at its property in Fredericksburg for emotionally and mentally disabled children. *See* Composite Exhibit "D".

36.     The Church was required to apply for a special use permit as private schools are not permitted as of right in the C-T zoning district. *See* Zoning Code §78-480.

37.     The City Council has the sole authority to grant special use permits. *See* Zoning Code §78-993(a).

38.     The standards the City Council considers in deciding whether to grant a special use permit are contained in the Zoning Code §78-994, and are as follows:

> (a) The proposed special use at a specified location shall be:
>     (1)  In harmony with the adopted comprehensive plan.
>     (2) In harmony with the purpose and intent of the zoning district regulations.
>     (3) In harmony with the existing uses or planned uses of neighboring properties.
> (b) The proposed special use and related improvements shall be designed, sited, landscaped and otherwise configured such that the use will not hinder or

discourage the appropriate development or use of adjacent, neighboring or community land and structures, or impair the economic, social or environmental value thereof.

(c) As minimum standards for a proposed special use, the planning commission may recommend and city council may require:

(1) Appropriate screening, buffer planting and landscaping.

(2) Enhanced utility, drainage, parking, sidewalk, loading and other on-site facility design requirements.

(3) Sign standards of a stricter nature than those which apply to the district in which the proposed use is located.

(4) Open space requirements of a stricter nature than those which apply to the district in which the proposed use is located.

(5) Participation in off-site pro rata improvements for reasonable and necessary sewerage and drainage facilities as provided for in this division.

(6) Other standards and criteria arising out of and applicable to the specific nature of a given structure or use as deemed necessary by the director of building and development services or the zoning administrator.

39.     Private schools are a use permitted in the C-T zoning district with a special use permit. *See* Zoning Code §78-481(4).

40.     The Church has a sincere religious belief to minister to emotionally and mentally disabled children.

41.     The Church's desire to minister to special needs children also flows from its sincerely held belief in the contents of the Biblical book of Matthew, chapter 19, verses 13 through 14 which state:

> Then were there brought unto [Jesus] little children, that he should put his hands on them, and pray: and the disciples rebuked them. But Jesus said, "Suffer little children, and forbid them not, to come unto me: for of such is the kingdom of heaven." (KJV)

42.     The Church's vision, which flows from this Scripture is to have the Church operate as an integral place of learning with an integrated on-site ministry to children with emotional or mental disabilities.

43.     Pastor Hirsch was introduced to Fairwinds Day School through a pastor acquaintance.

44.     Fairwinds Day School is a day school for children with emotional and mental disabilities.

45.     Fairwinds has been in operation since 2009.

46.     Fairwinds desires to move to the Church's location and the Church will operate Fairwinds as a ministry of the Church.

47.     During the 2009-2010 school year, Fairwinds enrolled twelve students.

48.     In order to be enrolled at the day school, a student must have an Individual Education Plan (IEP) that determines the child has a qualifying disability and states that the child shall attend a private day school.

49.     The students in the day school have been diagnosed with conditions such as PTSD related to child abuse, bi-polar disorder, speech and language impairment, Pervasive Developmental Disorder, Specific learning disabilities related to cognitive processing problems, Reactive attachment disorder, and depression.

50.     The day school will operate at the Church from 8:30 a.m. to 3:00 p.m.

51.     The day school will utilize classrooms 202 and 203 on the second floor of the Church building and will also use offices in rooms 204 and 205 on the second floor of the Church's building.

52.     None of the day school operations will be conducted on the first floor of the Church facilities.

53.     The day school will have 6 full time staff.

54.     The student to staff ratio exceeds the ratio required by the Virginia Department of Education requirements.

55.     Fairwinds has never had any safety issues with the children in the day school.

56.     The space to be utilized by the day school was inspected by the Fredericksburg Fire Department on or about July 30, 2010, and was found to be in compliance with City fire codes.

57.     The Virginia Department of Social Services also conducted a health inspection on January 10, 2010, and the space to be utilized by the day school passed.

58.     The Virginia Department of Education, after an application and inspection process, issued a license to operate the day school at the Church for children with emotional disability and other health impairment, speech, or language impairment. *See* Exhibit "E".

### The Staff Report on the Church's Application for a Special Use Permit

59.     On or about September 8, 2010, Raymond P. Ocel, the Director of Planning and Community Development for the City of Fredericksburg, prepared and submitted a memorandum to the Planning Commission concerning the Church's application for a special use permit. *See* Exhibit "D".

60.     The report stated that the proposed day school at the Church would be in harmony with the adopted comprehensive plan of the City of Fredericksburg.

61.     The report stated, "Churches and related uses have been an important and constant use in the City and their continued expansion should be encouraged."

62.     The report stated that the proposed day school at the Church would be in harmony with the purpose and intent of the zoning district regulations.

63.     The report stated, "The proposed school use fits within the intent section of the CT district as it is a use which will be compatible with the surrounding residential and commercial uses in the area."

64.     The report stated that the proposed day school at the Church would be in harmony

with the existing uses or planned uses of neighboring properties.

65.     The report stated, "The requested permit is in keeping with and in (sic) compatible with the zoning and other uses in the neighborhood."

66.     The report also stated that the "proposed school operation will not hinder or discourage the development or use of adjacent, neighboring or community land and structures, or impair the economic, social or environmental value thereof."

67.     The report concluded, "Based upon the application meeting the criteria noted above, staff recommends approval of the special use permit" with the conditions listed in the report.

## Public Hearings on the Special Use Permit

68.     On September 8, 2010, the Planning Commission for the City of Fredericksburg met and considered the Church's special use permit application. *See* Minutes of Planning Commission meeting of September 8, 2010, attached as Exhibit "F".

69.     After some of the members of the Planning Commission asked questions of the Church about the day school, the public hearing was closed and the meeting adjourned without any Planning Commission decision on the Church's application.

70.     On September 29, 2010, the Planning Commission again met to consider the Church's application for a special use permit.

71.     Mr. Ocel, the Director of Planning and Community Development for the City resubmitted his memorandum report recommending approval of the Church's application for a day school. *See* Exhibit "G".

72.     The Planning Commission, during the September 29, 2010, meeting, voted to unanimously approve the requested special use permit for the Church's day school. *See* Exhibit

"H".

73.     On October 26, 2010, the Fredericksburg City Council met to consider the Church's special use permit application.

74.     Mr. Ocel submitted a memorandum report to the City Council that detailed the Planning Commission's recommendation of approval for the day school, repeated the earlier analysis that the staff had performed of the special use permit application, and reiterated a staff recommendation of approval of the application. *See* Composite Exhibit "I".

75.     Pastor Michael Hirsch and Mr. Ed Murphy, director of the day school, spoke in favor of the application for a special use permit and answered questions from the members of the City Council.

76.     At the October 26 hearing, City councilwoman Kerry Devine noted that she had requested and received a map from the zoning staff of homes and facilities serving disabled and special needs individuals within Fredericksburg.

77.     Ms. Devine stated, "Fredericksburg City is struggling, I think, at being the host to what may be an abundance of group homes and group facilities which is why we requested that information and that map to begin with."

78.     Ms. Devine questioned the location of the school in the City when it served disabled individuals with special needs outside of the City.

79.     City councilman Bradford Ellis also spoke at the October 26 hearing and stated, "I can't say I'm really in favor of hosting additional students from surrounding jurisdictions."

80.     City councilman George Solly asked about the nature of the disabilities of the children that would be served by the day school.

81.     Councilman Ellis expressed that the overarching question for him was why have a

day school in Fredericksburg. He referenced the map provided to the City Council by staff that catalogued group homes and facilities with services for disabled and special needs individuals and stated that, "We just don't have a lot of space and, in my opinion, we're kind of saturated with this sort of...."

82.     During the October 26 hearing, City Attorney Kathleen Dooley cautioned the City Council after several questions were raised by the members of the City Council about the operations of the school and the safety of the students in the day care at the Church. Ms. Dooley cautioned that the proper consideration under the zoning code was the land use impact such as traffic and space and not the internal workings of the school.

83.     No public speakers spoke in opposition to the Church's application.

84.     At the conclusion of the October 26 hearing, the City Council voted 6-1 to table the motion for two weeks until the next City Council meeting due to the concerns raised by the members of the Council during the meeting and a potential conflict of interest issue with one City councilman.

85.     The City Council again considered the Church's application during its November 9, 2010, meeting.

86.     Mr. Ocel again provided a report and recommendation of approval for the special use permit. *See* Composite Exhibit "J".

87.     Attached to the staff report were several public comments in support of the Church's application for a day school. *See* Exhibit "J".

88.     At the November 9, 2010, meeting several public speakers spoke in favor of the Church's application.

89.     Mayor Thomas Tomzak moved to grant the special use permit application at the

November 9 meeting.

90.     After the motion by Mayor Tomzak was not seconded, Mayor Tomzak moved to table the issue for two more weeks until the next Council meeting.

91.     Councilman Ellis stated at the meeting that his concern boiled down to safety and "whether or not it is safe to operate a special needs day school within the same facility as a daycare."

92.     Councilman Ellis stated with regard to the children to be served by the day school that, "Kids from these backgrounds can often have significant outbursts that can greatly disturb or even harm the younger children in the daycare setting."

93.     Councilman Ellis stated that he spoke with parents who had children in daycare and that "the possibility that a special daycare school student could cause harm to a child in daycare was a constant concern."

94.     Councilman Ellis also stated that he spoke with a licensed social worker who expressed concern that the day school students would harm the daycare students.

95.     After the Council discussion, the motion to table the consideration of the special use permit until the next Council meeting passed 4-1.

96.     The City Council next took up the issue of the Church's special use permit application at its November 23, 2010, meeting.

97.     Mr. Ocel again submitted a staff report recommending approval of the application and updating the City Council on the prior consideration of the application. *See* Composite Exhibit "K".

98.     The comments made by Councilman Ellis during the November 9 meeting concerning the safety of the day care students were reprinted and attached to the staff report. *See*

Exhibit "K".

99. The staff report also contained a letter from Pastor Michael Hirsch responding to the concerns of safety raised by the Council. *See* Exhibit "K".

100. Pastor Hirsch's letter noted that the Church facility where the day school would be located had been inspected and approved by the City Department of Building and Development Services who issued a certificate of occupancy, by the Virginia Department of Social Services, by the Virginia Department of Health, and by the City Fire Marshall.

101. Pastor Hirsch's letter pointed out that the day care and the day school operating schedules had a time buffer so that they did not operate and occupy the facility at the same time.

102. Pastor Hirsch also provided licensing information for the individuals who would work in the day school.

103. Pastor Hirsch spoke in favor of the application at the November 23 meeting and stated that the Church would not discriminate against disabled students and asked the City Council to approve the special use permit.

104. Rev. Susan Hirsch, a trustee of the Church, spoke in favor of the Church's application and noted the time difference between the day care and the day school and expressed the Church's commitment to the safety of the children in both the day care and the day school.

105. Several members of the public also spoke in favor of the Church's application during the November 23 meeting.

106. Mayor Tomzak commented that a lot of the concerns regarding safety raised by the Council were not justifiable issues and moved to approve the special use permit.

107. Councilman Ellis again raised concerns about the safety of the day care students if they come into contact with the day school students.

108.    Councilman Ellis stated that he was concerned about the safety of the day care students because there was nothing to stop the day school students from co-locating in the same space with the day care students "ever, ever, ever."

109.    Councilman Ellis suggested that the Church have its special use permit for the day care revoked if it wanted to pursue the day school.

110.    The Council voted 3-3 on the motion and so the motion failed because of a tie.

111.    The City Council denied the Church's application for a special use permit. *See* Exhibit "L".

112.    The City Council encouraged the Church to give up its special use permit for the day care if it wanted to have a day school for the disabled children.

113.    The Church desires to operate a day school from its location in accordance with its religious beliefs but is prohibited from doing so because of the Council's denial of its application for a special use permit.

114.    Because of the Council's denial of the special use permit, the Church is unable to minister to the children in the day school and will have to forego those ministry opportunities in the future.

115.    The day school currently has no location to meet and provide services to disabled children.

116.    The day school cannot accept any students until it moves into Calvary's facility.

117.    If the day school is not allowed to operate in the Church, disabled children that could be served by the day school will have to be turned away.

118.    If the day school cannot move into the Church, Calvary will be prohibited from exercising its religious beliefs in ministering to children with disabilities.

119.     There is no adequate remedy at law for the violations of the Church's constitutional and statutory rights as set forth herein.

120.     The Church is irreparably harmed by the Council's denial of its special use permit as it is unable to exercise its religious beliefs in ministering to the children in the day school.

## COUNT 1 – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

121.     Plaintiff realleges all matters set forth above in ¶¶1-120.

122.     Defendant City of Fredericksburg, Virginia, is a public entity.

123.     Plaintiff desires to operate a day school for children with mental or emotional disabilities.

124.     Children with mental or emotional disabilities are disabled.

125.     The school will only accept children who have an Individualized Education Plan (IEP) pursuant to 20 U.S.C. §1414.

126.     A child may not have an Individualized Education Plan (IEP) unless that child has been found to be disabled as defined in 20 U.S.C. §1401(3).

127.     The children in the day school have a physical or mental impairment that substantially affects one or more of their major life activities.

128.     The children in the day school have a record of having a physical or mental impairment that substantially affects one or more of their major life activities.

129.     The children in the day school are regarded as disabled by the Defendant who discriminated against them because of an actual or perceived physical or mental impairment.

130.     Defendant's decision to deny Plaintiff's request for a special use permit was a direct result of animus towards children in the day school.

131.     Defendant has no legitimate, nondiscriminatory reason for denying Plaintiff's

request for a special use permit.

132.    Any nondiscriminatory reason given by the Defendant for denying Plaintiff's request for a special use permit was a pretext for discrimination.

133.    The denial of the special use permit has an unlawful discriminatory effect upon disabled children in the day school.

134.    The denial of the special use permit has a significantly adverse or disproportionate impact on disabled children in the day school.

135.    The Defendant failed to make a reasonable accommodation for disabled children in the day school.

WHEREFORE, Plaintiff respectfully requests that the Court grant the declaratory and injunctive relief set forth herein and award such damages to Plaintiff as are reasonable and just.

## COUNT 2 – VIOLATION OF THE REHABILITATION ACT

136.    Plaintiff realleges all matters set forth above in ¶¶1-120.

137.    Defendant City of Fredericksburg, Virginia, is a public entity.

138.    Upon information and belief, Defendant receives federal financial assistance

139.    Plaintiff desires to operate a day school for children with mental or emotional disabilities.

140.    Children with mental or emotional disabilities are disabled.

141.    The school will only accept children who have an Individualized Education Plan (IEP) pursuant to 20 U.S.C. §1414.

142.    A child may not have an Individualized Education Plan (IEP) unless that child has been found to be disabled as defined in 20 U.S.C. §1401(3).

143.    The children in the day school have a physical or mental impairment that

substantially affects one or more of their major life activities.

144.    The children in the day school have a record of having a physical or mental impairment that substantially affects one or more of their major life activities.

145.    The children in the day school are regarded as disabled by the Defendant who discriminated against them because of an actual or perceived physical or mental impairment.

146.    Defendant's decision to deny Plaintiff's request for a special use permit was a direct result of animus towards children in the day school.

147.    Defendant has no legitimate, nondiscriminatory reason for denying Plaintiff's request for a special use permit.

148.    Any nondiscriminatory reason given by the Defendant for denying Plaintiff's request for a special use permit was a pretext for discrimination.

149.    The denial of the special use permit has an unlawful discriminatory effect upon disabled children in the day school.

150.    The denial of the special use permit has a significantly adverse or disproportionate impact on disabled children in the day school.

151.    The Defendant failed to make a reasonable accommodation for disabled children in the day school.

WHEREFORE, Plaintiff respectfully requests that the Court grant the declaratory and injunctive relief set forth herein and award such damages to Plaintiff as are reasonable and just.

## COUNT 3 – VIOLATION OF RLUIPA

152.    Plaintiff realleges all matters set forth above in ¶¶1-120.

153.    Defendant's denial of Plaintiff's requested special use permit violates Plaintiff's free exercise of religion as guaranteed by RLUIPA, 42 U.S.C. §2000cc, et seq.

154.   Plaintiff's religious beliefs are sincerely and deeply held.

155.   Defendant's denial of Plaintiff's special use permit application imposes a substantial burden on Plaintiff's religious exercise.

156.   Defendant's denial of Plaintiff's special use permit application is not in furtherance of a compelling governmental purpose.

157.   Defendant's denial of Plaintiff's special use permit application is not the least restrictive means of furthering any governmental interest.

158.   Upon information and belief, Defendant receives federal financial assistance.

159.   Upon information and belief, Defendant's Zoning Code affects commerce with foreign nations, among the several states, or with Indian tribes.

160.   Defendant's Zoning Code permits it to make individualized assessments of the proposed uses of property within the County, including the Property at issue in this case.

161.   Plaintiff is a religious assembly or institution.

162.   Defendant's denial of Plaintiff's special use permit application treats Plaintiff on less than equal terms with other secular assemblies or institutions.

163.   Defendant's denial of Plaintiff's special use permit application discriminates against Plaintiffs on the basis of religion.

164.   Defendant's denial of Plaintiff's special use permit application unreasonably limits Plaintiffs within the zoning jurisdiction of the Property as the Church is prohibited from utilizing its Property to exercise its religion in the way its faith mandates.

WHEREFORE, Plaintiff respectfully requests that the Court grant the declaratory and injunctive relief set forth herein and award such damages to Plaintiff as are reasonable and just.

## COUNT 4 – VIOLATION OF THE FREE EXERCISE CLAUSE
## OF THE FIRST AMENDMENT

165.   Plaintiff realleges all matters set forth above in ¶¶1-120.

166.   Defendant's denial of Plaintiff's special use permit application violates Plaintiff's right to free exercise of religion, as guaranteed by the First Amendment to the United States Constitution.

167.   Plaintiff's religious beliefs are sincerely and deeply held.

168.   Defendant's denial of Plaintiff's special use permit application substantially burdens Plaintiff's sincerely held religious beliefs.

169.   Defendant's denial of Plaintiff's special use permit application is neither neutral nor a law of general applicability.

170.   Defendant's denial of Plaintiff's special use permit application specifically and discriminatorily targets religion and religious worship.

171.   Defendant's Zoning Code contains a system of individualized exemptions such that it is not neutral and generally applicable.

172.   There is no compelling government interest sufficient to justify the denial of Plaintiff's special use permit application.

173.   The denial of Plaintiff's special use permit application is not the least restrictive means to accomplish any permissible government purpose sought to be served by the Zoning Code.

174.   Defendant's denial of Plaintiff's special use permit application is not narrowly tailored, as required for restrictions on Plaintiff's free exercise of religion.

175.   Defendant has failed or refused to accommodate Plaintiff's sincerely held religious beliefs.

WHEREFORE, Plaintiff respectfully requests that the Court grant the declaratory and injunctive relief set forth herein and award such damages to Plaintiff as are reasonable and just.

## COUNT 5 – VIOLATION OF FREE SPEECH UNDER THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

176.   Plaintiff realleges all matters set forth above in ¶¶1-120.

177.   Defendant's denial of Plaintiff's special use permit application and its standards for granting a special use permit under §78-994 of the Zoning Code violate the Free Speech Clause of the First Amendment to the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment.

178.   Plaintiff's use is entitled to First Amendment protection as expressive content and expressive conduct.

179.   The Zoning Code §78-994 is an improper prior restraint on speech.

180.   The Zoning Code §78-994 does not contain precise and objective criteria to govern the discretion of the City Council in deciding whether to grant a special use permit.

181.   The Zoning Code §78-994 empowers the City Council to covertly discriminate against uses that are protected by the First Amendment.

182.   To determine whether a proposed use is allowed as a special use, the City must analyze the content and viewpoint of speech and other expressive activity.

183.   The City denied Plaintiff's special use permit application because of the Church's religious expression and expressive association in ministering to disabled children.

184.   Defendant's denial of Plaintiff's special use permit application restricts Plaintiff's speech based on viewpoint and content.

185.   Defendant's denial of Plaintiff's special use permit application is overbroad because it sweeps within its ambit protected First Amendment speech, thus violating the rights of

Plaintiffs and third parties not before the Court.

186.   Defendant's denial of Plaintiff's special use permit application does not leave open ample alternative channels of communication.

187.   Defendant does not have a compelling interest for the denial of Plaintiff's special use permit application.

188.   Defendant's denial of Plaintiff's special use permit application is not narrowly tailored to achieve a compelling interest.

189.   Defendant's denial of Plaintiff's special use permit application is not the least restrictive means of achieving a compelling interest.

WHEREFORE, Plaintiff respectfully requests that the Court grant the declaratory and injunctive relief set forth herein and award such damages to Plaintiff as are reasonable and just.

## PRAYER FOR RELIEF

Plaintiff prays for judgment as follows:

a.   That this Court preliminarily and permanently enjoin the conduct of Defendant, its officers, agents, servants, and employees which violates the rights of Plaintiff and other parties not before the Court as protected by the First and Fourteenth Amendments to the United States Constitution, RLUIPA, the ADA, and the RA;

b.   That this Court preliminarily and permanently enjoin the Defendant, its officers, agents, servants, and employees from prohibiting Plaintiff from operating its day school in its church building;

c.   That this Court render a Declaratory Judgment declaring the denial of Plaintiff's special use permit application as alleged herein to be invalid and unconstitutional in all respects under the First and Fourteenth Amendments to the United States Constitution, RLUIPA, the

ADA, and the RA;

d.     That this Court grant to Plaintiff compensatory and nominal damages;

e.     That this Court grant to Plaintiff an award of their costs of litigation, including reasonable attorneys' fees and expenses;

f.     That this Court grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 23 day of May, 2011.


Erik W. Stanley
  Kansas Bar No.: 24326
  estanley@telladf.org
Kevin H. Theriot
  Georgia Bar No.: 373095
  ktheriot@telladf.org
**Alliance Defense Fund**
15192 Rosewood
Leawood, Kansas 66224
(913) 685-8000
(913) 685-8001 (facsimile)
Attorneys for Plaintiff

Matthew D. Fender
  Virginia Bar No. 76717
  mfender@mcguirewoods.com
**McGuireWoods LLP**
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1076
(804) 698-2209 (facsimile)
Local Counsel for Plaintiff

## VERIFICATION OF COMPLAINT

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint and the factual allegations thereof and that to the best of my knowledge the facts alleged therein are true and correct.

Executed this __23__ day of May, 2011.

Michael Hirsch
Pastor and Trustee
Calvary Christian Center