IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| CALVARY CHRISTIAN CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:11-cv-00342 |
| v. | ) | |
| | ) | |
| CITY OF FREDERICKSBURG, | ) | |
| VIRGINIA, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

COMES NOW the defendant, City of Fredericksburg, Virginia, ("the City"), by counsel, in support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure of the plaintiff's Complaint to state any claims upon which relief can be granted.

Plaintiff's Complaint purports to contain a total of five enumerated claims against the City, based upon alleged violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, RLUIPA, the Free Exercise Clause of the First Amendment, and the Free Speech Clause of the First Amendment. *See* Complaint, pp. 15-21. Plaintiff has failed to state any claims against the City upon which relief can be granted, so each of the claims asserted in the Complaint and the request for relief ("Prayer for Relief") should be dismissed against the City by this court.

**<u>BRIEF STATEMENT OF THE FACTS</u>**

The plaintiff in this action is Calvary Christian Center ("the Church") which is a church located within the City of Fredericksburg, Virginia. Complaint, ¶¶ 15, 17. The Church desires to allow the operation of Fairwinds day school on its premises. *Id.* at ¶ 46. Fairwinds is a day

school for children with mental and emotional disabilities. *Id.* at ¶ 44. The Church submitted an application to obtain a special use permit to allow 12 children between the ages of 10 and 15 to attend the day school. *Id.* at ¶ 35, Exhibit D to Complaint. The Church had already received a permit to operate a daycare back in 2009 from the city council for the City of Fredericksburg. *Id.* at 34. On November 23, 2010, the city council voted on a motion to grant the Church a special use permit for the operation of the Fairwinds day school. The vote was 3-3 so the motion failed. *Id.* at ¶ 110. The Church then filed its Complaint against the City of Fredericksburg on May 23, 2011 alleging five causes of action, labeled Counts 1-5. *See* Complaint.

## LEGAL ARGUMENT

### I.     Plaintiff Lacks Standing to Assert Counts 1 and 2 of the Complaint.

This court should dismiss Counts 1 and 2 as alleged in the Complaint since Calvary Church lacks standing to assert such claims. Count 1 is a claim for a violation of the Americans with Disabilities Act, and Count 2 is a claim for a violation of the Rehabilitation Act. Calvary Church is not the proper party to assert either of these claims against defendant.

The preliminary standing requirements in federal proceedings have been clearly set forth in several cases decided by the Supreme Court of the United States. To have initial standing to bring a claim, a plaintiff must meet the following:

> Article II, § 2 of the United States Constitution limits federal jurisdiction to actual cases and controversies…In order to meet the Article III requirements for standing, a plaintiff must prove: (1) that he or she suffered an "injury-in-fact;" (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury will likely be redressed by a favorable decision. *Friends of the Earth. Inc. v. Laidlaw Envtl. Services*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). If a plaintiff fails to make the necessary allegations, he or she has no standing. *Warth*, 422 U.S. at 517-518, 95 S. Ct. 2197.

*Goldstein v. Costco Wholesale Corp.*, 278 F. Supp. 2d 766, 769 (E.D. Va. 2003).  At minimum, plaintiff would need to meet these requirements to be able to assert its claims.  However, plaintiff is required to meet additional elements to have standing to assert claims for the discriminatory impact upon the disabled students from the denial of the special use permit under the ADA and the Rehabilitation Act.

The Fourth Circuit Court of Appeals addressed the additional standing requirements under the ADA and the Rehabilitation Act in the case of *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205 (4th Cir. 2002).  In *Freilich*, the court found that a doctor did not have third party standing under either the ADA or the Rehabilitation Act to bring suit for claims of violations of these acts regarding her dialysis patients.  *Id.* at 215.  The court found that to overcome limitations on third party standing, the plaintiff must show an injury in fact, a close relationship between the plaintiff and the people that the entity desires to assert rights on behalf of, and "a hindrance to the third party's ability to protect his or her own interests."  *Id.*  Even assuming that plaintiff had met the first two prongs of standing in *Freilich*, the Fourth Circuit Court of Appeals found that she did not allege sufficient obstacles to her patients bringing lawsuits on their own behalf (prong #3).  *Id.*  The doctor could not bring suit on behalf of her patients, as even patients with disabilities are often capable of asserting their own rights.  *Id.*  No hindrance to the plaintiff's patients' ability to do so was sufficiently demonstrated in this case.  This court should apply the holding in *Freilich* to the case at hand.

Plaintiff will likely rely on the Fourth Circuit Court of Appeals decision in *Helping Hand v. Baltimore County, Md.* in order to assert that it has standing in the present situation to file suit asserting the claims for violations of the ADA and the Rehabilitation Act.  515 F.3d 356 (4th Cir. 2008).  In *Helping Hand*, the Court of Appeals held that a methadone clinic had standing to

assert a claim on its own behalf for an alleged violation of the ADA based upon the Attorney

General's implementation into Title II of the ADA some regulations that bar associational

discrimination.  *Id.* at 364.  The appendix to the regulations made it clear that the provisions were

intended to ensure that healthcare providers and others who provide professional services to

those with disabilities are not subject to discrimination because of any association with people

with disabilities.  *Id.*

In *Helping Hand*, the plaintiff, a methadone clinic, filed suit due to a county zoning

ordinance preventing its operation based upon its association with methadone patients.  *Id.* at

358.  The methadone clinic was found to have associational standing under Title II of the ADA

to sue on its own behalf for a violation of the ADA for discrimination it had faced based upon its

association with prior drug addicts.  *Id.* at 365.[1]  *But see Goldstein v. Costco Wholesale Corp.*,

278 F. Supp. 2d at 766 (holding that the Disability Rights Council of Greater Washington lacked

standing to bring suit on its own behalf for violations of the ADA and the Rehabilitation Act).

The differences between the court's decisions in *Freilich* and *Helping Hand* are small but

highly important.  The court in *Helping Hand* explained how the seemingly incongruous

decisions were reached based upon the exact types of claims asserted by the plaintiffs in each

case.  *See Helping Hand,* 515 Fr.3d at fn. 4.  The decision in *Freilich* is much more applicable to

---

[1] It should be noted, however, that one factor which reinforced the decision in *Helping Hand* is that the particular plaintiff was a methadone clinic.  "Every circuit that has considered whether a methadone clinic has standing under Title II of the ADA to bring a claim based upon injuries resulting from its association with the addicted persons its serves has found that the clinic does have standing."  *Helping Hand*, 515 F.3d at 364.  Defendant argues that methadone clinics in particular are a niche group of facilities which will always have standing.  Therefore, *Helping Hand* may not be an applicable case for plaintiff to use as basis to claim standing in the present situation as neither the Church nor the Fairwinds day school is a methadone clinic.  Furthermore, it should be noted that *Helping Hand* mainly addresses standing under the ADA and likely does not provide plaintiff any support for proceeding on a claim for a violation of the Rehabilitation Act.

the case at bar than the decision in *Helping Hand* since plaintiff's claims under Counts 1 and 2 most closely align with claims asserted on behalf of third parties (the disabled students) rather than claims on behalf of the Church itself.

Plaintiff has not clearly specified the specific provisions of the ADA or the Rehabilitation Act under which plaintiff's claims against defendant have been brought.  Plaintiff has also failed to plead that its claims were being made on behalf of itself rather than simply on behalf of the disabled children allegedly intending to enroll in Fairwinds day school.  Plaintiff has alleged a general ADA violation and a general Rehabilitation Act violation, but Plaintiff has not pled an *associational discrimination claim* on behalf of itself under Count1 or Count 2.  The allegations contained in Count 1 refer repeatedly to the "unlawful discriminatory effect upon disabled children in the day school" and the "significantly adverse or disproportionate impact on disabled children in the day school."  Complaint, ¶¶ 133-134.  The Complaint also alleges under Count 1 that defendant "failed to make a reasonable accommodation for disabled children in the day school."  *Id.* at ¶ 135.  *See also* ¶¶ 149-151, regarding the same allegations under Count 2, the claim for the violation of the Rehabilitation Act.

What plaintiff fails to do under Counts 1 and 2 of the Complaint is to allege any unlawful discriminatory effect under the ADA or Rehabilitation Act that the Church itself has suffered as a result of its association with the disabled students.  Plaintiff Calvary Church is not alleging that it has suffered a discriminatory impact in these two claims.  It has admitted over and over again that the discriminatory impact has been upon the disabled students.  *Id.* at ¶¶ 133- 134, 149-151. It has not alleged sufficient allegations to proceed on these claims on its own behalf.  The Church is only asserting alleged violations of the acts and the corresponding impact on the disabled children, rather than on the Church.  Plaintiff would have had to plead that the Church had been

discriminated against in order to attempt to assert a claim on its own behalf under the ADA or the Rehabilitation Act for associational discrimination.  Even then, however, plaintiff would still be the improper party to assert such actions.

Clearly plaintiff's claims under Counts 1 and 2 should be found to be third party claims. These claims should be dismissed as plaintiff has failed to plead facts sufficient to meet the three requirements for third party standing in *Freilich*, especially the requirement that the disabled students are incapable of bringing the claims on their own behalf.  *Freilich,* 313 F.3d at 215. Plaintiff's claims under Counts 1 and 2, therefore, fail to meet the necessary standing requirements.

Furthermore, even if this court determines that the Church is asserting an associational discrimination claim under Title II of the ADA or under the applicable portion of the Rehabilitation Act, the Church does not have associational standing to assert these claims because only Fairwinds day school would have standing to assert associational discrimination claims on its own behalf.  The association between the Church and the disabled students is too tenuous for an associational claim by plaintiff.  Plaintiff is also not the appropriate entity to bring a third party claim on behalf of the members of Fairwinds (the disabled students), as Fairwinds is the actual day school that the students would be attending, had the special use permit been granted.  The Church is one step removed from standing, even for an associational claim, since Fairwinds is the entity that will operate the school and have the disabled students as its students. For the reasons discussed above, this court should find that plaintiff lacks standing to assert the claims found under Counts 1 and 2 of the Complaint.

**II.      Counts I and II Should Be Dismissed as Safety Was a Valid Consideration for the Denial of the Special Use Permit.**

In Counts I and II of the Complaint, plaintiff contends that defendant's "decision to deny Plaintiff's request for a special use permit was a direct result of animus towards children in the day school" and that "[d]efendant has no legitimate, nondiscriminatory reason for denying Plaintiff's request for a special use permit." Complaint, ¶¶ 131-32, 147-48. In fact, plaintiff acknowledges several times in the Complaint (and the documents attached to it) that city council stated that safety was the primary concern for denying the special use permit. Plaintiff asserts that "Councilman Ellis stated at the meeting that his concern boiled down to safety and 'whether or not it is safe to operate a special needs day school within the same facility as a daycare.'" *Id.* at ¶ 92. Councilman Ellis' statements were notably supported by concerned parents who had children in daycare (¶ 93), a licensed social worker (¶ 94), a teacher, and a rehabilitation specialist. *See* "WRT SUP for a Special Day School," attached to Complaint, pp. 87-88.

Safety concerns are a valid reason for denying the special use permit, as safety is a justifiable factor in evaluating situations involving persons with disabilities. *See* 42 U.S.C. § 12182 (b)(3). In *Montalvo v. Radcliffe*, the Fourth Circuit Court of Appeals found that a karate facility did not violate the ADA by not allowing a student with AIDS to participate in a karate group lesson program. 167 F.3d 873, 879 (4th Cir. 1999). The karate facility offered to give the student with AIDS private lessons to eliminate the risk of HIV transmission from the disabled student to other students that could possibly occur if the lessons were taught in a group setting. *Id.* Safety to the other students in the program was a paramount concern in the court's decision to exclude the student from the group karate lessons. *Id.*

In the present situation, Fairwinds day school desires to operate out of the same facility as a before and after-school daycare. Plaintiff alleges that the day school will operate on a separate floor of the church and at hours that allegedly will not overlap with the children from the

daycare.  Complaint, ¶¶ 50-52, 101.  However, since there is still a chance that the students from both programs would interact, at which point safety becomes a factor (*see* "WRT SUP for a Special Day School," attached to Complaint, pp. 87-88), the best option is to preclude both the daycare and the day school from operating in the same building.

The city council members did propose a solution to eliminate the risk involved to the day care students.  Plaintiff states that "Councilman Ellis suggested that the Church have its special use permit for the day care revoked if it wanted to pursue the day school."  *Id.* at ¶ 109.  Plaintiff also alleges that the "City Council encouraged the Church to give up its special use permit for the daycare if it wanted to have a day school for the disabled children."  *Id.* at ¶ 111.  This solution would allow for a facility for the day school students, while at the same time completely eliminating any potential safety hazard to daycare students.  The only truly safe measure to ensure that the daycare students are protected from possible hazards associated with the operation of the day school would be to not operate both programs out of the same building.[2]

Plaintiff asserts that there is no safety threat to the daycare students and that "Fairwinds has never had any safety issues with the children in the day school."  Complaint, ¶ 54.  However, as the attachment to plaintiff's Complaint suggests, childcare workers familiar with students with mental and emotional disabilities had expressed concern over the possible interaction between the students.   The teacher felt that the "risk was not worth it."  The social worker felt that the possibility of the interaction "should be avoided at all costs."  Finally, the rehabilitation specialist stated that a lot of red flags go up regarding the proposal.   "WRT SUP for a Special Day School," attached to Complaint, pp. 87-88.

---

[2] Furthermore, it is important to note that defendant's position need only pass a rational basis scrutiny evaluation.  *See Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1267 (4th Cir. 1995).

Safety concerns are a valid defense for denying the special use permit, as "nothing in the Americans with Disabilities Act requires 'an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health and safety of others.'" *Breece v. Alliance TractorTrailer Training II, Inc.*, 824 F. Supp. 576, 579-580 (E.D. Va. 1993) (denying the applicant with hearing disability entry into a truck driving training program). In *Breece,* the court found that there was no violation of the ADA. *Id.* at 580. Safety concerns are an equally valid defense under the Rehabilitation Act for the denial of the special use permit as well. *See Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d at 1261.

Furthermore, plaintiff's claims are pure conclusory allegations with no factual support to show that any "nondiscriminatory reason given by the Defendant for denying Plaintiff's request for a special use permit was a pretext for discrimination." Complaint, ¶¶ 132, 148. It is true that "in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Id*. "Unwarranted inferences, unreasonable conclusions, or arguments" are also not considered. *Id.* (*quoting Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009)). Conclusions alone are not sufficient to establish a cause of action in a complaint:

> While a complaint attacked by a <u>Rule 12</u>(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (CA7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, <u>478 U.S. 265, 286</u> (1986) (on a motion to dismiss,

courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Strauss v. City of Chicago*, 760 F.2d 765, 767 (1985) (holding that the lower court's dismissal of a complaint for failure to state a claim was affirmed since "no facts [were alleged] to suggest that the policies of which [plaintiff] complain[ed] actually exist[ed]"); *Ashcroft v. Iqbal*, 556 U.S. ___ 071015, Slip Op. 22 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at Slip Op. 14-15.

By asserting that there was no legitimate reason to deny the special use permit, while at the same time reiterating in the Complaint that Councilman Ellis discussed safety issues at the city council meetings time and again, plaintiff is simply espousing unwarranted inferences, unfounded legal conclusions, and bare assertions devoid of "factual enhancement."  Counts 1 and 2 should be dismissed against defendant since safety was a valid reason for the denial of the special use permit.

**III.   Count II Should Be Dismissed Because Plaintiff Has Not Shown that the Day School Students' Disabilities Were the *Sole* Reason for the Denial of the Special Use Permit.**

This court should dismiss Count II against defendant since plaintiff has failed to show that the disabilities of the students enrolled in the day school were the sole reason for the denial of the permit.   Unlike the less stringent requirements of the ADA, the Rehabilitation Act requires a claimant to demonstrate that the alleged harm done giving rise to a violation was "solely by reason of her or his disability."  *See* 29 U.S.C. § 794(a); *see also Manickavasagar v. VCU*, 667 F. Supp. 2d 635, fn. 4 (E.D. Va. 2009); *Baird Ex Rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999).  Showing that the denial of the special use permit was solely due to the disability of

the students intending to enroll in the day school is a vital component for a claim under this act.

Plaintiff alleges in the Complaint that defendant "has no legitimate, nondiscriminatory reason for denying Plaintiff's request for a special use permit." Complaint, ¶ 145. Plaintiff does not provide sufficient factual support for this position, thus it is nothing more than a conclusory allegation that should not be considered by this court. Furthermore, plaintiff has not alleged under Count 2 that the permit was denied *solely* because of the <u>disabilities</u> of the student. Plaintiff has alleged several times that the permit was denied due to "discriminatory" reasons, but plaintiff has not pled under Count 2 that the discrimination was solely based upon the disabilities of the students. For the sake of argument, the alleged "discrimination" could have been based upon any number other factors not related to disabilities. As this court is aware, discrimination arises in infinitely more contexts than simply in relation to mental and emotional disabilities.

Furthermore the facts, as alleged by plaintiff in the Complaint, do not support the conclusion that the permit was denied solely based upon the disabilities of the students at the day school. Plaintiff alleges that the motion to grant the special use permit failed because the vote ended in a 3-3 tie. Complaint, ¶ 110. Plaintiff states several times that both Councilwoman Devine and Councilman Ellis raised questions about the school. *Id.* at ¶¶ 77-79, 91-94, 97. In order for the motion to grant the special use permit to have passed, the motion needed at least four votes in its favor. As plaintiff has alleged in the Complaint, there were three votes against the motion. *See Id.* at ¶ 110.

Plaintiff has made no mention of which members of city council voted against the motion. Plaintiff has also not put forth any comments or concern expressed by one of the council members who voted against the proposal. Therefore, plaintiff has no basis for alleging in the

Complaint (and can assert nothing but conclusory allegations) that the special use permit was denied solely based upon discriminatory reasons because of the disabilities of the day school students; plaintiff has not asserted the rationale underlying the third "nay" voter's decision. Count 2 of the Complaint should be dismissed against defendant since plaintiff has failed to sufficiently assert that the special use permit was denied solely based upon the disabilities of the students in the day school.

> **IV.**    **Count 3 Should Be Dismissed as Plaintiff Has Failed to State any Claims under RLUIPA upon which Relief Can Be Granted.**

Under Count 3 of the Complaint, plaintiff asserts that the denial of the special use permit violated plaintiff's "free exercise of religion as guaranteed by RLUIPA." Complaint, ¶ 153. Plaintiff also alleges that the denial of the special use permit imposes a "substantial burden on Plaintiff's religious exercise." *Id.* at ¶ 155. Plaintiff asserts that the "Church has a sincere religious belief to minister to emotionally and mentally disabled children." *Id.* at ¶ 41. Finally, plaintiff states that "the Church will operate Fairwinds as a ministry of the church." *Id.* at ¶ 46. Despite all of these conclusory allegations, Count 3 of the Complaint still fails to state any claim against defendant upon which relief can be granted for the following reasons.

> A.    *The operation of the Fairwinds day school at the Church is not a religious exercise.*

As a prerequisite for RLUIPA to apply at all in this situation, as plaintiff alleges, the operation of the Fairwinds day school at the Church's facilities must constitute a religious exercise. While plaintiff claims that the school will operate as a ministry of the Church, plaintiff has not pled that the day school will be religious in and of itself. Plaintiff has failed to plead that religion courses will be taught to the day school students, that the students will partake in religious activities, or that religion will play any role at all in the functioning of the day school, apart from its physical location inside of the Church.

RLUIPA in part states that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution - (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc(a)(1).  Religious exercise has been defined as:

> A "religious exercise" consists of a specific type of exercise, an exercise of *religion,* and this is not the equivalent of an exercise—any exercise— by a religious body. "The term `religion' has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will." *Davis v. Beason,* 133 U.S. 333, 342, 10 S.Ct. 299, 33 L.Ed. 637 (1890), overruled on other grounds in *Romer v. Evans,* 517 U.S. 620, 634, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). The United States Supreme Court has explained that "[t]he `exercise of religion' often involves not only belief and profession but the performance of... physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread…"

*Greater Bible Way Temple v. City of Jackson*, 733 N.W. 2d 734, 741 (Mich. 2007).  Regarding a claim for a violation of RLUIPA, plaintiff carries the burden of proof.  "The plaintiff has the burden to prove that RLUIPA is applicable and that the government has implemented a land use regulation that imposes a substantial burden on the exercise of religion."  *Id.*  The burden is also on the plaintiff to prove that the desired activity is a religious exercise.  *Id.* at 745.

Not every activity conducted in a religious building owned by a religious organization falls within the category of religious exercise.  *See New Life Worship Ctr. v. Town Of Smithfield Zoning Bd. Of Review*, C.A. No. 09-0924, p.25 (R.I. Super, 2010).  Buildings used by any religious organizations for secular purposes and activities or to generate revenue to finance religious activities are not automatically protected.  *See Westchester Day v. Village of Mamaroneck*, 386 F.3d 183, 189-190 (2nd Cir. 2004).

In *New Life Worship Ctr.*, the court found that a fitness facility and dance studio proposed to be located within a high school building to be used in connection with the activities of the church located on the property did not automatically constitute a religious use. *Id.* at 25. Furthermore, the denial of the special use permit for the dance and fitness facility on the church property did not render impracticable any religious use on the property. *Id.* at 26. The court upheld the board of zoning's decision to deny the special use permit for the facility. *Id.* at 30. Additionally, the court stated that "the religious aim of strengthening the congregation through fellowship may not be permitted to be perverted into a justification for establishing a commercial operation of a fitness center and dance studio that is open to the public and located in the same building where students attend school." *Id.* at 24. *See also Community Synagogue v. Bates*, 1 N.Y.2d 445, 493, 154 N.Y.S.2d 15, 22 (N.Y.C.A. 1956); *Westchester Day Sch.*, 386 F.3d at 189-90. Ultimately the court in *New Life Worship Ctr.* stated that the use of the building for a public fitness and dance facility was likely not a religious use. *Id.* at 25. Even if it was considered to be such, taking all factors into consideration (including safety issues to the high school students), the denial of the special use permit by the board of zoning was affirmed, and there was no RLUIPA violation. *Id.* at 30.

Although a finding that the activity in question constitutes a "religious exercise" is not the only requirement to succeeding on a claim for a violation of RLUIPA, this determination is certainly a key component. In *Greater Bible Way Temple*, the only evidence that the plaintiff presented to establish that the proposed use of an apartment complex was a religious exercise was an affidavit signed by the bishop of the church setting forth the church's mission. 733 N.W. 2d at 734. The mission included furthering the teachings of Jesus Christ by provided assistance and housing to the citizens of Jackson. Plaintiff did not present any evidence that the proposed

apartment complex "would be used for religious worship or for any other religious activity." *Id.* The court held that "[s]omething does not become a 'religious exercise' just because it is performed by a religious institution." *Id.* The court found that there was no burden on a religious exercise and the city's decision not to rezone the property was not a violation of RLUIPA. The plaintiff had not shown that the building of the apartment complex constituted an exercise in religion. *Id.*

In another case, with facts similar to those in the present case before this court, the operation of a daycare in a school was found to not be a religious exercise. *See Ridley Park v. Zoning Hearing Bd.*, 920 A.2d 953 (Pa. Commw. Ct., 2007). Although a daycare was a component of carrying out a church's religious mission, it was not considered to be a fundamental religious activity of the church. *Id.* at 960. The court stated that "the Church failed to meet its burden of proving that it was substantially denied a reasonable opportunity to engage in activities that were fundamental to its religion, [and] the Board erred in granting the Church's application to operate a daycare on its property." *Id. See also Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 654 (10th Cir. 2006) (holding that there was no evidence that building a daycare on a particular site was intimately related to the religious tenants of the church); *Camp Ramah in the Poconos, Inc. v. Zoning Hearing Board of Worcester Township,* 743 A.2d 1019 (Pa. Cmwlth.2000) (holding that a summer camp that included a religious component and was run by practitioners of a particular religion did not change the recreational nature of the use of the property into one that constituted a religious use).

In the present situation, this court should find that the Fairwinds day school, though operated by a religious organization (plaintiff) and situated in a church, does not constitute a

religious exercise that falls within the protections afforded by RLUIPA.  Count 3 should be dismissed against defendant.

B.  *The denial of the special use permit has not put a substantial burden on plaintiff's exercise of religion.*

Despite plaintiff's allegations that the denial of the special use permit puts a substantial burden on the Church's exercise of religion (Complaint, ¶ 155), plaintiff has asserted nothing more than legal conclusions to show that that a "substantial burden" has been placed upon it. While substantial burden has not been explicitly defined under RLUIPA, various circuits have attempted to define it in different ways.  *See Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). The Fourth Circuit has followed the United States Supreme Court's guidance and decided that "for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (*quoting Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)).  *See also Smith v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009). According to this definition adopted by the Fourth Circuit, there is no substantial burden to plaintiff's exercise of religion as the Church in no way has been forced to modify its beliefs.

However, despite the various definitions of what constitutes a substantial burden, an applicable definition has specifically been addressed in the context of a school setting, which might be considerably appropriate to the case at hand.[3]  In *Shepherd Montessori Center v. Ann Arbor Charter Twp*, the court felt that for a burden under RLUIPA to be considered substantial "the government regulation must compel action or inaction with respect to the sincerely held

---

[3] Defendant offers the court this slightly alternative definition of "substantial burden," as the Fourth Circuit Court of Appeals cases defining "substantial burden" in the context of RLUIPA almost exclusively deal with prisoners' rights.  *See Lovelace*, 472 F.3d at 174; *Ozmint*, 578 F.3d at 246.

belief; mere inconvenience to the religious institution or adherent is insufficient." 675 N.W.2d

271, 281 (Mich. App. 2003). In *Shepherd Montessori Center*, the court decided that government

regulation does not create a substantial burden on religious activity when it only incidentally

makes it more difficult to practice the religion. *Id*. Without deciding for sure whether a

substantial burden was imposed, the court considered the following factors:

> [W]hether there are alternative locations in the area that would allow the school consistent with the zoning laws; the actual availability of alternative property, either by sale or lease, in the area; the availability of property that would be suitable for a K-3 school; the proximity of the homes of parents who would send their children to the school; and the economic burdens of alternative locations. These types of factors must be taken into consideration in determining whether there has been a substantial burden on religious activity.

*Id.* at 282. In applying these factors to the facts of this case, there is no substantial

burden on religious exercise to plaintiff. Although plaintiff has alleged that the day

school has no current location to meet (Complaint, ¶ 115), plaintiff has not pled that there

is no other property that is available for purchase or lease or that there would be an

additional economic burden for relocating in another location. Plaintiff's ability to

practice its religion has only been incidentally burdened, as the denial of the special use

permit is not a substantial burden on the exercise of religion and simply constitutes an

inconvenience. Not only is the operation of the Fairwinds day school not an exercise of

religion (as discussed in § IV(A) above), but there is no substantial burden on plaintiff by

not allowing the day school to operate in the same facilities as the daycare.

Deciding that there is a substantial burden on the exercise of religion in this situation

would be overstepping the bounds set forth in the Constitution and giving preference to a

religious entity when a non-religious facility would not be so fortunate. The granting of the

special use permit would favor religious entities over non-religious entities, as a non-religious

facility seeking to house the same type of non-religious day school for disabled children would

17

not have the benefit of RLUIPA protection.

In *Village of Mamaroneck*, the United States Court of Appeals for the Second Circuit stated that "RLUIPA occupies a treacherous narrow zone between the Free Exercise Clause, which seeks to assure that government does not interfere with the exercise of religion, and the Establishment Clause, which prohibits the government from becoming entwined with religion in a manner that would express preference for one religion over another, or religion over irreligion."  386 F.3d at 189.  Although the court in *Village of Mamaroneck* did not make a specific ruling on this issue, it indicated that a plan by a religious school to create addition classrooms for purposes that were both religious and secular was not necessarily a religious undertaking simply because the school was religious.  This type of action would not necessarily be covered by RLUIPA because there would be no such protection if the institution was not religious; RLUIPA would not apply.  The court cited the following example:

> [A]ny improvement or enlargement proposed by a religious school to its secular educational and accessory facilities would be immune from regulation or rejection by a zoning board so long as the proposed improvement would enhance the overall experience of the students. Thus if two identically situated schools submitted functionally identical applications to a zoning board to rebuild and enlarge their gymnasium facilities, one being a religious school, the other a secular school, according to standards applied by the district court, the zoning board would be free to reject the application of the secular school but not that of the religious school, assuming the gymnasium would improve the experience of the students in the religious school.

*Id.* at 189.  This court should consider these same implications, as any non-religious organization or facility attempting to operate Fairwinds day school (a non-religious school) would not qualify for any relief under RLUIPA.

In the present situation, the Fairwinds day school is not a religious institution in and of itself, as plaintiff has not pled any facts indicating that there would be any religious aspects of the school itself.  Plaintiff only argues that assisting children with disabilities is one of its desired

18

ministries.  Complaint, ¶ 40.  There is no substantial burden upon plaintiff's exercise of religion, and the denial of the special use permit is simply inconvenient in preventing the operation of the specific Fairwinds day school on plaintiff's facilities.  Plaintiff has not asserted that there are no reasonable alternative locations for the school to operate, and providing relief to plaintiff in this situation under RLUIPA would be an improper use of the Act.  This court should find that there has been no substantial burden to plaintiff's exercise of religion, and Count 3 should be dismissed against defendant.

C. *Denying the special use permit was the least restrictive means for furthering a compelling government interest.*

Even if this court finds that the denial of the special use permit by the city council has placed a substantial burden on the Church's exercise of religion, the denial of the permit was arguably the least restrictive means for furthering the compelling governmental interest of the safety of the children in the daycare.

It is clear that the safety, especially that of children, is a compelling government interest. *See Schleifer v. City of Charlottesville*, 963 F. Supp. 534, 543 (W.D. Va. 1997); s*ee generally Forest Hills Early Learning Center v. Lukhard*, 728 F.2d 230, 241 (4th Cir. 1984).  As noted by plaintiff in the Complaint and the documents attached, the primary concern stressed by Councilman Ellis relating to the special use permit was the concern for the safety of the daycare students situated in the same building as the students planning to attend the Fairwinds day school.  Complaint, ¶ 92.  *See* "WRT SUP for a Special Day School," attached to Complaint, pp. 87-88.  Therefore, it is indisputable in this case that a primary justification for the denial of the special use permit was in fact a compelling government interest, one requirement for those seeking to defend a claim for a violation of  RLUIPA.  *See* 42 U.S.C. § 2000cc(a)(1).

Defendant also argues the denial of the permit for Fairwinds to operate in the same

facility as the daycare is the least restrictive means to further the compelling state interest of the safety of the daycare students. While plaintiff attempts to argue that the students in both the daycare and the day school will occupy different floors of the Church and that the schools will operate at different times, there is always the risk that the two groups will overlap to pose a safety risk to the daycare students. The Fairwinds day school has already attempted to operate its school at two other locations without zoning approval. *See* Memorandum from the City Manager, attached as p. 82 to the Complaint. Therefore, it is apparent that the day school has operated in violation of proper zoning procedures on two occasions. The least restrictive means to satisfy the compelling state interest of the safety of the day care students is to operate the daycare and the day school in separate facilities. The RLUIPA claim should be dismissed against defendant for all of the reasons mentioned above.

### V.   Plaintiff Has Failed to State any Claim under Count 4 of the Complaint upon which Relief Can Be Granted.

In Count 4 of the Complaint, plaintiff asserts that defendant's denial of the special use permit violates plaintiff's right to the "free exercise of religion, as guaranteed by the First Amendment to the United States Constitution." Complaint, ¶ 166. However, plaintiff's claim under Count 4 fails to state a claim upon which relief can be granted for several reasons.

First, for the reasons noted in § IV of this Memorandum, plaintiff has failed to state a viable claim for a violation of RLUIPA. The applicable case law is clear that "[e]valuating a statutory violation under RLUIPA involves the same threshold issues as invoked by the Free Exercise Clause for the most part." *Brown v. Ray*, 695 F. Supp. 2d 292, 299 (W.D. Va. 2010). Since plaintiff has failed to state a claim for a violation of RLUIPA upon which relief can be granted, plaintiff cannot state a viable claim for a violation of the Free Exercise Clause of the First Amendment. In fact, plaintiff has a much higher hurdle in attempting to establish an

RLUIPA claim than in attempting to assert a claim under the Free Exercise Clause. *See Ozmint*, 578 F.3d at 251; *Braithwaite v. Hinkle*, 752 F. Supp. 2d 692, 695 (E.D. Va. 2010); *Madison v. Riter*, 240 F. Supp. 2d 566 (W.D. Va. 2003) (stating that "a governmental accommodation of religious exercise, such as the one provided by RLUIPA, is not *per se* invalid as an establishment of religion despite granting protections going beyond what the Free Exercise Clause would otherwise require."). *Id.* at 572.

The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523 (1993). Its protections include its directive that no law shall prohibit the free exercise of religion. *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001). While plaintiff has asserted several times that the denial of the special use permit constituted a violation of the Free Exercise Clause, plaintiff does not specifically reference any statute, law, or ordinance utilized by defendant in the denial of the special use permit that gives rise to the claim asserted under Count 4. The only mention of any law giving rise to the violation is plaintiff's assertion that "Defendant's Zoning Code contains a system of individualized exemptions such that it is not neutral and generally applicable." Complaint, ¶ 171. Plaintiff has pled no other facts or allegations asserting that a specific law has been enacted which violates Free Exercise Clause in regard to Count 4.

Although Count 5 of the Complaint discusses that specific zoning code sections violate free speech, there is nothing under Count 4 which states that any specific zoning ordinances are in violation of the Free Exercise Clause of the First Amendment. Plaintiff bases its claim simply upon the denial of the special use permit by defendant and nothing more. Plaintiff's claim under Count 4 is deficient for failure to plead which zoning code provisions have been adopted to

suppress plaintiff's religious beliefs, practices, or exercises in regards to the claim presented.  If indeed plaintiff has any claim for a violation of rights of religious exercise (though defendant argues it does not), the claim would be most appropriately brought via RLUIPA, which plaintiff has already done in Count 3.

Even if this court finds that plaintiff has asserted that the special use permit was denied pursuant to a particular law or ordinance, plaintiff has failed to show under Count 4 that the denial of the permit was not based upon a neutral law of general applicability.  Defendant contends that plaintiff's legal conclusions to the contrary contained in ¶ 169 are insufficient.  The Fourth Circuit has stated that a neutral, generally applicable law does not offend the Free Exercise Clause, even though the law may have an incidental effect on religious practice. *American Life League, Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir. 1995).

While defendant still argues that the denial of the special use permit does not have any effect on a "religious exercise," even if this court finds there to be such an effect, plaintiff has not identified the specific law causing the burden nor has plaintiff pled that there is a law which is not neutral and generally applicable so as to offend plaintiff's rights under the Free Exercise Clause.  Plaintiff only asserts that defendant's "denial of Plaintiff's special use permit application is neither neutral nor a law of general applicability."  Complaint, ¶ 169.  A "denial" is not a law, however, and defendant argues that plaintiff has failed to effectively plead the requirements for asserting a violation of the Free Exercise Clause.

This court should also dismiss Count 4 of the Complaint because the denial of the permit was justified by a compelling state interest.  This compelling interest involving public safety has frequently been considered by the Fourth Circuit Court of Appeals involving claims of violations of the Free Exercise Clause.  In *Forest Hills Early Learning Center v. Lukhard*, the court stated

that although a particular law impeding religious activity would generally violate the Free Exercise Clause, it is "justified by [showing] a compelling state interest arising from some substantial threat to public health, safety, peace, or order, *see Yoder*, 406 U.S. at 221-29, 92 S. Ct. at 1536-40; *Sherbert*, 374 U.S. at 403, 83 S. Ct. at 1793, and [that it] is the least restrictive means for protecting the compelling state interest, *id.* at 406, 83 S. Ct. at 1795." 728 F.2d 230, 240-41 (4th Cir. 1984).

In *Forest Hills Early Learning Center v. Lukhard*, the Fourth Circuit Court of Appeals overturned a ruling of summary judgment which had been granted in favor of the state which had enacted legislature exempting religious daycare centers from complying with licensing and other regulations. *Id.* at 235. Non-religious daycares had filed suit stating that these exemptions were improper, as they provided the religious daycare centers with a competitive advantage. *Id.* at 233, 237. The court overturned the ruling on summary judgment based upon several considerations, including safety and whether the activities of the daycare were actually shown to be religious. *Id.* at 242-43. The considerations for safety by the court asserted in *Forest Hills Early Learning Center v. Lukhard* should also be recognized by the court in the present case. [4] Furthermore, defendant has already asserted in this Memorandum that the permit was denied based upon a compelling government interest done with the least restrictive means. *See* § IV(C).

Additionally, in *First Assembly of God v. City, Alexandria, Va.*, the Fourth Circuit Court

---

[4] Although defendant acknowledges that the Fourth Circuit Court of Appeals reached a different holding in *Forest Hills Early Learning Ctr. v. Grace Bap.*, 846 F.2d 260 (4th Cir. 1988) (finding that the exemptions provided to the religious daycares did not violate the Establishment Clause), this subsequent case did not specifically overrule the holding in *Forest Hills Early Learning Center v. Lukhard,* 728 F.2d 230, nor does it invalidate the significance of the court's consideration of the safety factors discussed in that case.

of Appeals held that there was no violation of the Establishment Clause.[5]  739 F.2d 942, 944 (4th

Cir. 1984).  The court upheld the revocation of a special use permit for a church to operate a day

school based upon zoning ordinances.  *Id.* at 943.  The court felt that "the challenged special use

permit conditions [had] a strictly secular purpose: the promotion of public health, safety, and

welfare."  *Id.* at 944.

The principles of *First Assembly of God* should be applied to this case involving the Free

Exercise Clause.  This court should also find that plaintiff has not asserted a viable claim for a

violation of the Free Exercise Clause in the present case, as the ordinances and considerations for

the special use permit promote public health, safety, and welfare.  "The City's authority to

require that such conditions be met was specifically recognized in *Lemon v. Kurtzman*, 403 U.S.

602, 91 S. Ct. 2105, 29 L. Ed. 2d 745, *reh'g denied*, 404 U.S. 876, 92 S. Ct. 24, 30 L. Ed. 2d 123

(1971), where the Supreme Court emphasized that 'Fire inspections [and] building and *zoning*

*regulations...* are examples of necessary and permissible [requirements].'  *Id.* at 614, 91 S. Ct. at

2112 (emphasis added).'"  *First Assembly of God*, 739 F.2d at 944.  For all of the reasons stated

above, plaintiff has not made any claims under Count 4 upon which relief can be granted, and

this court should dismiss this claim against defendant.

**VI.    Count 5 of the Complaint Does Not State a Claim Against Defendant upon
which Relief Can be Granted.**

Plaintiff alleges that defendant's denial of the special use permit and its "standards for

granting a special use permit under § 78-994 of the Zoning Code violate the Free Speech Clause

---

[5] In considering violations of the Free Exercise Clause, it is helpful to consider the Establishment
Clause as well.  "The Free Exercise Clause of the First Amendment must be read together with
the Establishment Clause.  'The Establishment Clause limits any government effort to promote
particular religious views to the detriment of those who hold other religious beliefs or no
religious beliefs, while the Free Exercise Clause affirmatively requires the government not to
interfere with the religious practices of its citizens.'"  *Mellen v. Bunting*, 181 F. Supp. 2d 619,
631 (W.D. Va. 2002) (*quoting Brown v. Gilmore,* 258 F.3d 265, 274 (4th Cir.2001)).

of the First Amendment."   Complaint, ¶ 177.  Plaintiff also asserts that its proposed use of its

real property is entitled to First Amendment protection as expressive content and expressive

conduct.  *Id.* at ¶ 178.  However, there is no restriction on speech in the denial of the special use

permit to plaintiff, and this claim should be dismissed against the City.

The United States Supreme Court has carefully considered when limitations on conduct

or expression are violations of the First Amendment.  In *Texas v. Johnson*, the court stated:

> In deciding whether particular conduct possesses sufficient communicative
> elements to bring the First Amendment into play, we have asked whether "[a]n
> intent to convey a particularized message was present, and [whether] the
> likelihood was great that the message would be understood by those who viewed
> it." 418 U.S., at 410–411, 94 S.Ct., at 2730.  Hence, we have recognized the
> expressive nature of students' wearing of black armbands to protest American
> military involvement in Vietnam, *Tinker v. Des Moines Independent Community
> School Dist.,* 393 U.S. 503, 505, 89 S.Ct. 733, 735, 21 L.Ed.2d 731 (1969); of a
> sit-in by blacks in a "whites only" area to protest segregation, *Brown v. Louisiana,*
> 383 U.S. 131, 141–142, 86 S.Ct. 719, 723–24, 15 L.Ed.2d 637 (1966); of the
> wearing of American military uniforms in a dramatic presentation criticizing
> American involvement in Vietnam, *Schacht v. United States,* 398 U.S. 58, 90
> S.Ct. 1555, 26 L.Ed.2d 44 (1970); and of picketing about a wide variety of causes,
> see, *e.g., Food Employees v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 313–314, 88
> S.Ct. 1601, 1605–06, 20 L.Ed.2d 603 (1968); *United States v. Grace,* 461 U.S.
> 171, 176, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983).

491 U.S. 397, 404 (1989).  If indeed any expressive conduct or expressive content is to be

considered "speech" in the present situation, plaintiff has put forth no indication of particularized

message in regard to ministering to disabled children.  Plaintiff had also not pled that a

particularized message was to be conveyed, how the message was to be understood, and who

was to view the message.  Furthermore, plaintiff clearly has not asserted how the message would

be presented outside of the Church building itself.

Plaintiff's allegations in the Complaint under Count 5 misstate the applicable First

Amendment jurisprudence.  The use of property as a day school is a form of content, and not, in

and of itself, speech or expressive.  The expressive nature of some conduct does bring it within

the First Amendment's protection as "symbolic speech." *See United States v. O'Brien*, 391 U.S. 367 (1968) (burning of draft card), *Texas v. Johnson*, 491 U.S. at 397 (burning the American flag). However, not all conduct qualifies as expressive conduct. The mere intent to express an idea by engaging in conduct does not convert conduct into speech. Instead, First Amendment protection extends only to conduct that is "inherently expressive," and the message conveyed by the conduct must be "overwhelmingly apparent." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 65-66 (2006). Where an action is expressive only because of an accompanying explanatory speech, then the conduct itself does not come within the protection of the First Amendment.

In *Rumsfeld*, law schools denied military recruiters access to on-campus interviews, as a means of expressing their disapproval of the government's policy on homosexuals in the military. *Id.* at 51. They claimed that the Solomon Act, which conditioned certain federal funding on permitting military on-campus access, denied their freedom of speech, and that their action in denying accessibility to the recruiters was expressive conduct. *Id.* at 53. The United States Supreme Court rejected this argument, saying that "an observer who sees military recruiters interviewing away from the law school has no way of knowing whether the law school is expressing its disapproval of the military, all the law school's interview rooms are full, or the military recruiters decided for reasons of their own that they would rather interview someplace else." *Id.* at 66. Furthermore, the Supreme Court found that a "law school's recruiting services lack the expressive quality of a parade, a newsletter, or the editorial page of a newspaper." *Id.* at 64. The court held that there was no violation of the First Amendment right to freedom of speech.

Likewise, the Fairwinds day school lacks these expressive qualities as well. An observer

who sees that a day school is located within the Church's facilities would have no way of knowing whether the Church is expressing its support for the education of children or whether the arrangement is a straight-forward, arms length business transaction between the owner of real property and a tenant.  The lease or use of space in and of itself is not "inherently expressive," and the message conveyed is not "overwhelmingly apparent."  Additionally, the proposed activity in this case is to take place indoors (*see* Complaint, ¶ 51), in the classrooms and offices on the second floor of the building, so it is unclear who a reasonable "observer" would be.  There would be nothing to observe.  The use of the Church for the day school could be expressive if it were to be accompanied by a statement by the Church that it supports the education of all children or these children in particular, but plaintiff has not pled that such statements were planned and now have been thwarted.  Plaintiff is not qualified for protection under the First Amendment's free speech provision.

Furthermore, even if this court finds that plaintiff's speech was limited, there is no restriction on freedom of speech in the present situation.  Contrary to plaintiff's conclusory allegations, the ordinance plaintiff cites that allegedly gives rise to the violation was not adopted to curtail conduct, expression, or speech.   Therefore, this court should also apply a lower standard of scrutiny when evaluating the ordinance in question.  When a "regulation [is] adopted for a purpose unrelated to the suppression of expression — e.g., to regulate conduct, or the time, place, and manner in which expression may take place — a court must apply a less demanding intermediate scrutiny.  *See id.* at 406-07; *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000)."  *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 512-513 (4th Cir. 2002). Intermediate scrutiny should be used to evaluate the ordinance, and this court should find that no violation has been committed.

As noted earlier in this Memorandum, there is clearly a compelling government interest in the safety of the daycare students to justify denying the special use permit.  Plaintiff's claim under Count 5 should also fail because there is nothing asserting that the zoning ordinance in question affected the ability of the members of the Church to speak, assemble, or associate with one another in any regard.  *See Grace United Methodist v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006) [6]; *see also American Life League Inc.*, 47 F.3d at 645 (holding that act in question did not violate free speech as it served substantial government interests, was not aimed at expression, and was narrowly tailored).  For these reasons, Count 5 should be dismissed against defendant for failure to state a claim upon which relief can be granted.

### VII.    Plaintiff Is Not Entitled to the Relief Sought in the "Prayer for Relief."

Plaintiff is not entitled to the injunction, the declaratory judgment, or the damages and other relief sought in the Prayer for Relief, as plaintiff has failed to state any claims upon which relief can be granted.   The declaratory judgment is not proper relief in this case.  Plaintiff has filed a motion for preliminary injunction, and defendant intends to oppose that motion in another responsive pleading.  This court should not grant any of the items sought by plaintiff, including compensatory or nominal damages, and plaintiff's Prayer for Relief should be denied.

### VIII.   Conclusion

For the above stated reasons, the City of Fredericksburg, Virginia, by counsel, respectfully requests that this court grant defendant's Motion to Dismiss Pursuant to Federal

---

[6] In *Grace United Methodist*, the church argued that there was a violation of free speech when it did not receive a permit to operate a daycare center because the church was prohibited from gathering children together to hear the message of the church.  451 F.3d at 656.  The court affirmed the district court's decision to dismiss such a claim "because in its view the City's land use regulations were unrelated to expression and there was no evidence presented that the zoning regulations affected the ability of the Church members to speak, assemble, or associate with one another."  *Id.* at 656-57.

Rule of Civil Procedure 12(b)(6) for failure of plaintiff to state any claims against defendant

upon which relief can be granted.

Respectfully submitted,

CITY OF FREDERICKSBURG, VIRGINIA

By:      /s/ Medford J. Brown, IV

Jennifer Lee Parrish, VSB # 31996
Medford J. Brown, IV, VSB # 76543
PARRISH, HOUCK & SNEAD, PLC
701 Kenmore Ave, Suite 100
P.O. Box 7166
Fredericksburg, VA 22401-7166
(540) 373-3500
Fax: (540) 899-6394
parrish@phslawfirm.com
*Counsel for defendant City of Fredericksburg*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2011, I will electronically file the foregoing Defendant's Memorandum in Support of Its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) with the Clerk of the Court using the CM/ECF system which will send notice to:

Matthew D. Fender
Virginia Bar #76717
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1076
(804) 698-2209 (facsimile)
*Local Counsel for Plaintiff*

Erik W. Stanley
Kansas Bar # 24326
Kevin H. Theriot
Georgia Bar # 373095
Alliance Defense Fund
15192 Rosewood
Leawood, Kansas 66224
(913) 685-8000
(913) 685-8001 (facsimile)
*Counsel for Plaintiff*

                                                 /s/ Medford J. Brown, IV

Jennifer Lee Parrish, VSB # 31996
Medford J. Brown, IV, VSB # 76543
PARRISH, HOUCK & SNEAD, PLC
701 Kenmore Ave, Suite 100
P.O. Box 7166
Fredericksburg, VA 22401-7166
(540) 373-3500
Fax: (540) 899-6394
parrish@phslawfirm.com
*Counsel for defendant City of Fredericksburg*