UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Richmond Division

CALVARY CHRISTIAN CENTER,

    Plaintiff,

v.                                             Civil Action No. 3:11-CV-342-JAG

CITY OF FREDERICKSBURG, VIRGINIA,

    Defendant.

## MEMORANDUM OPINION

In this case, the plaintiff, Calvary Christian Center ("Calvary"), challenges the denial of a special use permit by the defendant, the City of Fredericksburg ("City"). Calvary seeks the special use permit to lease church space to the operator of a private day school for disabled children. Calvary alleges violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Free Exercise and Free Speech Clauses of the First Amendment. The City has moved to dismiss the Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The ACLU has filed an amicus brief in opposition to the motion to dismiss.

None of the plaintiff's claims can succeed, and the Court will grant the motion to dismiss. The plaintiff lacks standing to assert either the ADA or RA claims. The plaintiff has not alleged that operating the school amounts to religious activity, and so the church's RLUIPA and Free Exercise claims fail. Finally, the Free Speech claim fails for several reasons: operating the school is not expressive conduct, the City's zoning ordinance is content neutral, and the zoning regulations are neither vague nor overbroad.

Thus, the Court will grant the motion to dismiss.

## I. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; it does not resolve contested factual issues. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, that is, the "plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 540 U.S. at 545, to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Although the Court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

The Court held an evidentiary hearing on the plaintiff's motion for a preliminary injunction, and the parties submitted affidavits and exhibits for the Court to consider in deciding that motion. The Court will not consider this evidence in deciding the instant motion, and will

rely only the facts alleged in the Complaint. *See Virginia Polytechnic Institute v. Hokie Real Estate, Inc.*, No. 7:10cv00466, 2011 WL 926862, at *1 n.1 (W.D. Va. Mar. 15, 2011) (citing *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009)); *Brown v. Cabell County Bd. of Educ.*, No. 3:09-0279, 2009 WL 1470471, at *1-2 (S.D.W. Va. May 22, 2009).

## II. Statement of Material Facts

The following narrative represents the material facts of this case for the purpose of resolving the City's motion to dismiss.

Calvary believes that the Bible mandates that it have a social ministry, and it therefore reaches out to families in the City of Fredericksburg and the surrounding areas. In particular, Calvary believes that is has been called by God to provide services to children. Thus, in 2009 the church sought permission to operate a before and after school day care called Precious Moments Day Care ("PMDC"). The City granted Calvary a special use permit to operate PMDC. PMDC is licensed by the Commonwealth of Virginia as a religiously exempt child day care center for thirty-two children ages six through twelve years.

As part of Calvary's religious beliefs, it has applied for a special use permit to operate a day school for children with mental and emotional disabilities on its premises. Fairwinds Day School ("Fairwinds") is a day school for children with emotional and mental disabilities. Fairwinds operates on a for-profit basis. Fairwinds enrolled twelve students in the 2009-2010 academic year.[1] To enroll at the school, a student must have an Individual Education Plan ("IEP") that determines the child has a qualifying disability and states that the child shall attend a private day school. Students in Fairwinds have been diagnosed with conditions such as PTSD

---

[1] Fairwinds operated at a different location during the 2009-10 school year.

related to child abuse, bi-polar disorder, speech and language impairment, pervasive development disorder, cognitive processing problems, reactive attachment disorder, and depression.

In 2010, Calvary applied for a special use permit to allow Fairwinds to move into its building. Fairwinds would have six full time staff at Calvary, and would operate in the hours between 8:30 a.m. and 3:00 p.m., utilizing two classrooms and office rooms on the second floor of the church building.

The Complaint says that the children at PMDC will have no contact with students at Fairwinds. PMDC would use two rooms on the first floor of the building, from 6:00 a.m. to 8:15 a.m. and from 3:30 p.m. to 6:00 p.m.

In preparing to lease space to Fairwinds, Calvary was required to apply for a special use permit, which the Fredericksburg City Council ("Council") has the sole authority to grant.[2] The application was reviewed by the planning department, and Raymond P. Ocel ("Ocel"), the City's Director of Planning and Community Development, recommended approval of the special use permit. After two meetings, the planning commission recommended that the Council approve Calvary's application.

The Council then met three times to consider Calvary's special use permit application. Ocel submitted the planning commission's memorandum supporting approval. At the public hearings, members of the Council raised questions and concerns about allowing Calvary to house the day school. The council members' comments reflected numerous concerns: the number of group homes and group facilities already functioning in the Fredericksburg area; the propriety of Fredericksburg providing services to special-needs students from outside the area; the nature of

---

[2] Calvary satisfied the required inspections by the Virginia Department of Social Services and the fire department.

4

the disabilities of the Fairwinds students; the operation of Fairwinds; and the safety of the day care students.

At the third meeting, the Council voted three to three, with one member abstaining, on whether to issue the special use permit. Because a motion fails on a tie vote, Calvary's application for a special use permit was rejected.

### III. Counts in the Complaint

Count One of the Complaint alleges that the City violated the ADA. Calvary wants to operate a day school for children with disabilities. Calvary alleges that the City regarded the children as disabled and discriminated against them because of an actual or perceived physical or mental impairment. Calvary argues that the City's decision to deny Calvary a special use permit was a direct result of animus towards children in Fairwinds and was not based on any legitimate, nondiscriminatory reason.

Count Two of the Complaint alleges that the City violated the Rehabilitation Act for the same reasons as set forth in Count One.

Count Three of the Complaint alleges that the City violated RLUIPA. Calvary maintains that the City's zoning code permits individualized assessments of proposed uses of property and that the City treated Calvary on less than equal terms with other secular assemblies or institutions. Calvary argues that the City discriminated against Calvary on the basis of religion, unreasonably limiting Calvary's use of its property to exercise its religion.

Count Four of the Complaint alleges that the City violated the Free Exercise Clause of the First Amendment. Calvary alleges that the City's denial of Calvary's application substantially burdened Calvary's religious beliefs, was neither neutral nor a law of general applicability, and discriminatorily targeted religion and religious worship.

Count Five of the Complaint alleges the City violated the Free Speech Clause of the First Amendment. Calvary alleges that the City's zoning code is an improper restraint on speech, does not contain precise and objective criteria to govern the Council's discretion, is overly broad, and empowers the Council to discriminate covertly against uses protected by the First Amendment. Calvary maintains that the City denied its application because of the church's religious expression and association in ministering to disabled children. Calvary states that the Council restricted Calvary's speech based on viewpoint and content and did not leave Calvary alternative channels of communication.

## IV. Discussion

### A. ADA and RA Claims

In the opinion issued by the Court denying Calvary's motion for a preliminary injunction, the Court expressed serious doubts as to whether Calvary has standing to plead a claim under the ADA or RA. *See Calvary Christian Ctr. v. City of Fredericksburg*, No. 3:11-cv-342, 2011 WL 2899184, at *4-6 (E.D. Va. July 18, 2011). The Court incorporates its analysis on standing from that opinion and now finds that Calvary lacks standing to pursue these claims. In its prior opinion, the Court discussed the three types of standing that Calvary could claim: associational standing, associational discrimination, and third-party standing.[3] Calvary has alleged

---

[3] The Fourth Circuit has summarized these doctrines succinctly:

> The doctrine of third-party standing permits a plaintiff to bring suit on behalf of a third party for injury done to the third party in certain circumstances when the third party cannot effectively protect its own interest. The doctrine of associational standing permits an organization to bring suit on behalf of its members for injury done to its members when (among other requirements) its members would have standing to sue in their own right. Although these two standing doctrines differ, they are similar in that they both allow a plaintiff to bring suit based not on injury to itself but on injury to another. In contrast, a cause of action based on ADA associational discrimination permits a plaintiff to

6

discrimination that the students suffered in its ADA and RA claims; it has not claimed any unlawful discriminatory effect that Calvary *itself* suffered as a result of its association with the students. "The denial of the special use permit has an unlawful discriminatory effect upon disabled children in the day school." (Compl. ¶¶ 133, 149.) "The denial of the special use permit has a significantly adverse or disproportionate impact on disabled children in the day school." (*Id.* ¶ 134, 150.) Without discrimination against itself or its members, the church cannot claim standing as an association.

Further, as the Fourth Circuit held in *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 217 (4th Cir. 2002), "generalized references to association with disabled persons or to advocacy for a group of disabled persons" is insufficient to state a claim for associational discrimination. The Court therefore finds that Calvary lacks standing to pursue an associational discrimination claim under the ADA or RA.

Finally, Calvary has failed to demonstrate a hindrance to the students' ability to bringing suit on their own behalf to protect their own interests, as required to establish third-party standing under the ADA or RA. *See id.* at 215 (citations omitted). Thus, the Court finds that Calvary lacks third-party standing to pursue a claim on behalf of the students under the ADA or RA.

The ADA and RA claims are dismissed.

---

bring suit on its own behalf for injury it itself suffers because of its association with an ADA-protected third party.

*A Helping Hand v. Baltimore Cnty.*, 515 F.3d 356, 363 n.3 (4th Cir. 2008) (internal citations omitted).

7

*B. RLUIPA Claim*

RLUIPA protects religious assemblies and their adherents from zoning laws that impose a substantial burden on the free exercise of religion. 42 U.S.C. §§ 2000cc, *et seq.* To qualify for protection under RLUIPA, a plaintiff must be engaged in a religious activity. A religious exercise under RLUIPA is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc(7)(A). In the Court's previous opinion in this matter, the Court noted that Calvary has not pled sufficient facts to show that the curriculum and administration of the day school are anything other than secular. *See Calvary*, 2011 WL 2899184, at *9-10. Structures used by religious organizations for secular purposes are not necessarily protected as religious exercise. *See, e.g., Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 737 (6th Cir. 2007); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003); *Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477, 543 (S.D.N.Y. 2006).

Calvary stated that operating Fairwinds on its premises is an exercise of its "sincere religious belief to minister to emotionally and mentally disabled children." (Compl. ¶ 40.) The Court finds that Calvary has not pled any facts demonstrating that the operation of the day school by a third party is a religious exercise. Talismanic assertions lacking factual support are insufficient to satisfy the pleading standard set by *Twombly* and *Iqbal*. The RLUIPA claim is therefore dismissed.

*C. Free Exercise Claim*

The Free Exercise Clause of the First Amendment provides that "'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . .'" *Brown v. Ray*, 695 F. Supp. 2d 292, 299 (W.D. Va. 2010) (quoting U.S. Const. Amend. I). As

threshold issues to establishing a claim under the Free Exercise Clause, the plaintiff must show (1) that it sincerely holds the religious beliefs, and (2) that the claims are rooted in religious belief and are not purely secular. *Id.* (internal quotation marks and citations omitted).

"Evaluating a statutory violation under RLUIPA involves the same threshold issues as invoked by the Free Exercise Clause for the most part." *Id*; *see also Blount v. Fleming*, No. 7:04cv00429, 2006 WL 1805853, at *12 (W.D. Va. June 29, 2006) (same). For the reasons explained in the Court's discussion of the RLUIPA claim, the Court finds that Calvary has not pled that it is in engaged in religious exercise within the meaning of the Free Exercise Clause. The Free Exercise claim is dismissed.

### D. Free Speech Claim

Calvary alleges that the denial of the special use permit and the City's standards for granting the special use permit constitute an unconstitutional prior restraint on speech. Calvary contends that the City used vague and imprecise criteria that allow for subjective determination in determining whether to grant a special use permit.

#### 1. Expressive Conduct

For Calvary to be entitled to protection under the First Amendment, it must be engaged in expressive conduct. Calvary claims that its "speech" is its ministry to disabled children. (Pl.'s Opp'n Mem. 22.) For particular conduct—operating Fairwinds in this case—to implicate the First Amendment, the Court must determine whether "'[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *IOTA XI Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386, 391 (4th Cir. 1993) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)) (alterations in original).

9

Nearly every form of conduct conveys some kind of idea. A person walking outside and smiling on a sunny day communicates any number of possible messages: that the weather is good, that walking is good for one's health, that he has a satisfying life, and many other messages. Indeed, the happy walker could even be intentionally trying to communicate some or all of these messages. The Supreme Court, however, has said: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

Recognizing the dangers of calling all conduct "speech," the Fourth Circuit adopted its two pronged test in *IOTA XI*. See *IOTA XI*, 993 F.2d at 391. The actor must intend to convey a particularized message, and an observer must be likely to understand the message. Calvary's alleged speech fails both parts of the test. The Complaint does not make clear that the church intends to convey a message to the public.

Even if Calvary intended to communicate a message through allowing a school to operate on its premises, the message is not "particularized" as required by *IOTA XI*. Perhaps the church wants to tell people that rehabilitation of disabled children is a good idea. On the other hand, perhaps Calvary is saying that private schools are good. Perhaps Calvary means to say that education is good. Perhaps the church means something else entirely. The vagueness of the message simply does not meet the requirement that the church communicate a "particularized" message.

Given the lack of a particularized message, it is not likely that the casual observer will infer the message from the operation of the school.

In sum, the Court finds that allowing the school to operate on its premises is not speech, and the First Amendment is not implicated.

## 2. Content Neutrality

Even if Calvary is engaged in expressive conduct, the Court finds that the ordinance in question does not violate Calvary's First Amendment rights. At this part of the analysis, the level of scrutiny the Court must apply depends on whether the ordinance is aimed at the suppression of expression. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). If so, the Court must apply strict scrutiny. *See id.* (citing *Johnson*, 491 U.S. at 403). If the purpose of the regulation is unrelated to the suppression of expression, then the Court applies the less stringent standard set forth by the Supreme Court in *United States v. O'Brien*, 391 U.S. 367 (1968). *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (citations omitted).

The Fourth Circuit has explained that to determine whether a statute is aimed at the suppression of expression, "the principal inquiry . . . is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys." *Satellite Broad. & Commc'ns Ass'n v. F.C.C.* 275 F.3d 337, 353 (4th Cir. 2001) (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994)) (internal quotation marks omitted) (alteration in original). The first step of the analysis asks whether the statute on its face "'confers benefits or imposes burdens based upon the content of the speech it regulates.'" *Id.* (quoting *Chesapeake & Potomac Tel. Co. of Va. v. United States*, 42 F.3d 181, 193 (4th Cir.1994), *vacated on other grounds,* 516 U.S. 415 (1996)). The second step asks whether the statute's "'manifest purpose is to regulate speech because of the message it conveys.'" *Id.* at 354 (quoting *Turner,* 512 U.S. at 645).

Essentially, the Court's first job is to decide whether the zoning ordinance is content neutral, or whether it is designed to prevent or promote speech. A regulation is content neutral if:

> (1) the regulation is not a regulation of speech, but rather a regulation of the places where some speech may occur; (2) the regulation was not adopted because of disagreement with the message [the speech] conveys; or (3) the government's interests in the regulation are unrelated to the content of the [affected] speech.

*Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 432-33 (4th Cir. 2007) (quoting *Hill v. Colorado,* 530 U.S. 703, 719-20 (2000)) (internal quotation marks omitted) (alterations in original); *see also Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 512-13 (4th Cir. 2002) ("If . . . the regulation was adopted for a purpose unrelated to the suppression of expression-e.g., to regulate conduct, or the time, place, and manner in which expression may take place-a court must apply a less demanding intermediate scrutiny. (citation omitted)).

On its face, the zoning ordinance[4] is content neutral because it simply does not regulate speech. The ordinance regulates how speech occurs, not its content. Calvary and its parishioners

---

[4]The zoning code provision in question reads as follows:

> (a) The proposed special use at a specified location shall be:
>     (1) In harmony with the adopted comprehensive plan.
>     (2) In harmony with the purpose and intent of the zoning district regulations.
>     (3) In harmony with the existing uses or planned uses of neighboring properties.
> (b) The proposed special use and related improvements shall be designed, sited, landscaped and otherwise configured such that the use will not hinder or discourage the appropriate development or use of adjacent, neighboring or community land and structures, or impair the economic, social or environmental value thereof.
> (c) As minimum standards for proposed special use, the planning commission may
> [list of items the planning commission may require].

Fredericksburg Zoning Code § 78-994.

may preach the church's message, may put it on bumper stickers or tee shirts, or may place advertisements on television or in the newspaper. The zoning ordinance places no restriction on what Calvary has to say.

In *Covenant Media*, the Fourth Circuit faced a challenge to a city's sign ordinance brought by a billboard company. In that case, North Charleston enacted regulations governing where within the city billboards and other signs could be placed. *Covenant Media*, 493 F.3d at 424-25. Under the city regulations, a permit was required to construct a billboard. *Id.* at 425. The Fourth Circuit held that the regulation was not content based: "North Charleston was not concerned with the message that a sign (such as a billboard) conveyed but instead with where particular signs were located." *Id.* at 433.

Similarly, in this case the zoning provision does not target a specific message. Calvary does not claim that the City enacted this ordinance because it disagrees with the message that Calvary seeks to impart by operating Fairwinds. In other words, the ordinance was not enacted to suppress expression, and is content neutral.

Since the ordinance is content neutral and only incidentally affects speech, the Court applies the *O'Brien* test. Under *O'Brien*, the Court must uphold the statute if "'it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Satellite Broad.*, 275 F.3d at 355 (quoting *O'Brien,* 391 U.S. at 377).

The governmental interest at issue must redress past harms or prevent future ones. *Id.* at 356. The Fourth Circuit has cautioned, "[i]f a regulation places even incidental burdens on speech without yielding some genuine benefit, it must be struck down." *Id.* The narrowly

tailored element of the *O'Brien* test will be satisfied "'so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

Essentially, under *O'Brien*, the regulation at issue will pass constitutional muster if it advances at least one important or substantial governmental interest in a narrowly tailored fashion.

The City's zoning laws clearly serve any number of important governmental interests. Pursuant to Va. Code §15.2-2200, they assure that the citizens of Fredericksburg can enjoy quiet residential neighborhoods, and that commercial activity is centralized. The zoning ordinance insures aesthetically enjoyable communities within the City. It addresses transportation needs. It insures that the growth of the community is consonant with the "efficient and economical use of public funds." *Id.* The City also has a strong interest in the administration of its zoning laws for the benefit of everyone in the City, without outside interference. While doing all this, the ordinance imposes, at worst, an incidental inconvenience on Calvary.

The actions of the City in this case do not violate Calvary's free speech rights.

### 3. Overbreadth and Vagueness

As an afterthought, Calvary also claims that the ordinance provision is unconstitutionally overbroad and vague. The overbreadth doctrine is "'strong medicine'" to be applied "'sparingly and only as a last resort.'" *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 653 (4th Cir. 1995) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). For a regulation or ordinance to be struck down as overbroad, it must "proscribe[] so much protected speech that it must be struck down entirely." *Id.* As noted above, the ordinance does not proscribe any speech, by Calvary or

anyone else. Calvary has merely stated that the ordinance is overbroad, but has failed to explain how the overbreadth doctrine applies in this case.

As for vagueness, "[a] statute is unconstitutionally vague if it does not give a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). In particular, Calvary questions the "in harmony with" phrase in the ordinance provision, contending that such an imprecise term may be used to disguise discrimination against uses that the City Council dislikes. To strike down a law as vague, "the infringement on protected speech must be substantial." *Revere Nat'l Corp., Inc. v. Prince George's County*, 819 F. Supp. 1336, 1347 (D. Md. 1993) (citing *Young v. Am. Mini Theaters, Inc.*, 427 U.S. 50 (1976)). As explained, the Court has found the burden on speech to be incidental. Thus, Calvary's vagueness challenge will not survive.

The free speech claim is dismissed.

### V. Conclusion

For the foregoing reasons, the City's motion to dismiss is granted.

The Court will enter an appropriate order.

/s/ 
John A. Gibney, Jr.
United States District Judge

Date: November 21, 2011
Richmond, VA